UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
R.A. WILSON & ASSOCIATES, LTD.,

                  Petitioner,

    -against-                     MEMORANDUM AND ORDER
                                     10-CV-2232 (JS)(ARL)
CERTAIN INTEREST UNDERWRITERS AT
LLOYD'S LONDON,

                  Respondent.
----------------------------------X

APPEARANCES:
For Petitioner:    Aaron S. Halpern, Esq.
                   Joseph John Ortego, Esq.
                   Nixon Peabody LLP
                   50 Jericho Quadrangle, Suite 300
                   Jericho, NY 11753

For Defendant:     No appearance.

SEYBERT, District Judge:

       Pending before the Court is Petitioner's motion for a preliminary injunction to enjoin the selection of a third "umpire" arbitrator in a pending arbitration between Petitioner and Respondent. The Court previously denied Petitioner's motion for a temporary restraining order. See Docket No. 6. It now denies Petitioner's motion for a preliminary injunction and sua sponte dismisses this action.

## DISCUSSION

       Petitioner is a Maryland corporation that is in the business of obtaining and/or "binding" commercial liability

insurance coverage. Respondent is in the business of underwriting such coverage.

Petitioner and Respondent got into a legal dispute concerning an insurance policy issued on June 29, 2001. See 08-CV-322. On September 21, 2009, Judge Hurley compelled the parties to proceed in arbitration, based on the insurance policy's arbitration agreement.

The arbitration agreement provides for each side to choose a "party arbitrator." Pet. ¶¶ 13-14. The arbitration agreement then provides that "the two arbitrators shall appoint a third arbitrator," and that, if the arbitrators fail to agree on a third arbitrator, then "either [arbitrator] or either of the parties may apply to the appointer for the appointment of a third arbitrator." Pet. ¶ 16. The arbitration agreement further defines the "appointer" as the President of the Chartered Insurance Institute, or the Vice President of the Institute if the President is unavailable. See 08-CV-322, Docket No. 3 at 26. The agreement does not, however, specify the process that the party arbitrators must go through to appoint the third arbitrator, or the process that the appointer must use if the arbitrators cannot agree on a suitable candidate. Based on this alleged ambiguity, Petitioner seeks to have the Court rewrite the arbitration agreement to impose a defined process, because the parties have not been able to reach

2

such an agreement. To that end, Petitioner commenced this Petition, pursuant to 9 U.S.C. § 5, demanding that the Court "establish a method for the appointment of the third-arbitrator." Pet. at p. 5.

## DISCUSSION

9 U.S.C. § 5 provides that, if an arbitration agreement provides "for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire."

Here, the arbitration agreement sets forth a clear "method of naming or appointing an arbitrator." Specifically, the two party arbitrators are supposed to agree on the third, so-called "umpire" arbitrator. Pet. ¶ 16. And the agreement further provides that, if the party arbitrators fail to reach agreement, then the President or Vice President of the Chartered Insurance Institute is to select the third arbitrator, after considering candidates proposed by both the party arbitrators and the parties. Compl. ¶ 16; 08-CV-322, Docket No. 3 at 26.

True, the arbitration agreement does not specify the specific process that the party arbitrators or appointer must use in selecting the umpire arbitrator. But this is not a

3

failure to adequately define the "method" for choosing the umpire. Rather, the Court reads the arbitration agreement as giving the party arbitrators and the appointer the discretion to use their professional judgment in deciding upon an appropriate process in choosing the third arbitrator. So, enforcing the arbitration agreement as written, this means that – because the party arbitrators could not reach agreement – the President or Vice President of the Chartered Insurance Institute has full authority to select the umpire arbitrator. The Court cannot "circumvent the parties' designation" of this individual as the appointer. See In re Salomon Inc. Shareholders' Deriv. Litig., 68 F.3d 554, 561 (2d Cir. 1995) (designation of arbitral forum). Rather, the Court must "implement [the arbitration] clause as written." Global Reinsurance Corp.-U.S. Branch v. Certain Underwriters at Lloyd's, London, 465 F. Supp. 2d 308, 312 (S.D.N.Y. 2006). Here, "the next step in the umpire selection process is clear." Id. The parties, and the party arbitrators, are supposed to submit umpire arbitrator candidates to the appointer, who then makes the final determination. It follows then that Petitioner can seek no relief under 9 U.S.C. § 5.

Petitioner's motion for a preliminary injunction is DENIED and its petition is sua sponte DISMISSED. The Clerk of the Court is directed to mark this matter as CLOSED.

4

SO ORDERED.

```
          /s/
Joanna Seybert, U.S.D.J.
```

Dated:   Central Islip, New York
         May 26, 2010